UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| MARK MCPHAIL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No.: 2:22-cv-00137-TLS-APR |
| | ) | |
| THE TRUSTEES OF INDIANA | ) | |
| UNIVERSITY; KEN IWAMA, in his | ) | |
| individual and official capacities; VICKI | ) | |
| ROMÁN-LAGUNAS, in her individual | ) | |
| and official capacities; and DAVID | ) | |
| KLAMEN, in his individual and official | ) | |
| capacities, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

Kathleen M. Anderson (No. 16351-92)
BARNES & THORNBURG LLP
888 South Harrison Street, Suite 600
Fort Wayne, Indiana 46802
Telephone:      (260) 423-9440
Facsimile:      (260) 424-8316
Email:          kathleen.anderson@btlaw.com

V. Chisara Ezie-Boncoeur (No. 37251-71)
BARNES & THORNBURG LLP
201 South Main Street, Suite 400
South Bend, Indiana 46601-2130
Telephone:      (574) 237-1273
Facsimile:      (574) 237-1125
Email:          cezie@btlaw.com

**ATTORNEYS FOR DEFENDANTS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

STATE OF THE ISSUES .....................................................................................1

I.      STATEMENT OF FACTS, DISPUTED AND UNDISPUTED .........................3

II.     ARGUMENT AND AUTHORITIES.................................................................5

     A.      Summary Judgment Standard ..................................................................5

     B.      IU did not breach any contract with Plaintiff when, under ACA-33, it removed Plaintiff's teaching responsibilities and reduced his salary for one semester.  It also did not breach any contract with Plaintiff when IU terminated Plaintiff's employment based on threats of violence (Count I). ...........6

          1.      Plaintiff's appointment letter did not incorporate IU's employment policies. ...................................................................7

          2.      IU's employment policies do not constitute any form of standalone employment contract.....................................................9

          3.      Plaintiff's arguments fail, as a matter of law, to establish that IU had a contractual obligation to Plaintiff to comply with its academic policies or that IU did not follow material policies. .................10

     C.      As a matter of law and fact, IU, Iwama, and Román-Lagunas did not violate Plaintiff's constitutional right to due process protection in relation to the termination of Plaintiff's employment (Count V). .....................................14

          1.      Plaintiff was not, as a matter of law or fact, deprived of any property interest without due process or contrary to applicable law. ........14

          2.      Plaintiff's employment was terminated due to exigent circumstances under ACA-33 and pre-termination notice was not required given the exigent circumstances surrounding Plaintiff's threats of violence. ...................................................................16

          3.      Plaintiff received and has had access to appropriate due process.............17

          4.      Plaintiff also received due process with respect to the administrative decision to remove him from teaching for one semester and correspondingly adjusting his salary for one semester..................................................................................20

5.      Neither Iwama nor Román-Lagunas is individually liable.  To the extent Plaintiff argues otherwise, material fact issues exist precluding partial summary judgment. ......................................................21

D.      IU, Iwama and Román-Lagunas did not terminate Plaintiff's post-appeal process, and did not retaliate against him in violation of the First Amendment in relation to any post-dismissal appeal process (Count III: First Amendment Retaliation: 42 U.S.C. §§ 1983, 1985 Against All Defendants) ..........................................................................................23

1.      Disputed material facts preclude summary judgment on Plaintiff's retaliation claims alleged as Counts III and VII. .......................................23

2.      In addition to fact issues, Plaintiff failed to satisfy the elements of his retaliation claims. .....................................................................24

a.      Plaintiff did not suffer any material adverse action, nor is any causal link provided. ...........................................................25

b.      There is no individual liability against Iwama or Román-Lagunas (or Klamen though he is not part of the Motion). ..........27

E.      IU, Iwama and Román-Lagunas did not retaliate against Plaintiff in violation of the Civil Rights Act of 1866 in relation to any post-dismissal appeal process (Count VII:  Retaliation for Allegations of Employment Discrimination and Retaliation Civil Rights Act of 1866, 42 U.S.C. §§ 1981, 1983, 1985 Against all Defendants)..........................................................28

III.    CONCLUSION ..................................................................................................29

CERTIFICATE OF SERVICE .......................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

### *Cases*

*Ashcroft v. al-Kidd,*
    563 U.S. 731 (2011)............................................................... 21-22

*Barszcz v. Bd. of Comm. College,*
    400 F. Supp. 675 (N.D. Ill. 1975) .........................................16

*Bishop v. Wood,*
    426 U.S. 341 (1976)..............................................................14

*Bd. of Regents of State Colls. v. Roth,*
    408 U.S. 564 (1972)..............................................................14

*Bd. of Trs. of Purdue Univ. v. Eisenstein,*
    -- N.E.3d --, 2017 WL 4872915 (Ind. Ct. App. Oct. 30, 2017) ........................28

*Cafeteria & Restaurant Workers v. McElroy,*
    367 U.S. 886 (1961)..........................................................15, 17

*Capra v. Cook Cty. Bd. of Review,*
    733 F.3d 705 (7th Cir. 2013) .................................................28

*Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.,*
    741 F.3d 769 (7th Cir. 2013) ............................................. 15-16

*Cheli v. Taylorville Cmty. Sch. Dist.,*
    986 F.3d 1035 (7th Cir. 2021) ...............................................14

*Cleveland Bd. of Educ. v. Loudermill,*
    470 U.S. 532 (1985)..............................................................18

*Cmty. Found. of Nw. Indiana, Inc. v. Miranda,*
    120 N.E.3d 1090 (Ind. Ct. App. 2019) ..............................9

*Davis v. Munster Med. Rsch. Found., Inc.,*
    213 F. Supp. 3d 1074 (N.D. Ind. 2016) ............................24

*Davis v. Scherer,*
    468 U.S. 183 (1984)..............................................................23

*Daza v. State,*
    331 F. Supp. 3d 810 (S.D. Ind. 2018), *aff'd*, 941 F.3d 303 (7th Cir. 2019) .......................5

*Franciscan All., Inc. v. Padgett*,
   180 N.E.3d 944 (Ind. Ct. App. 2021)......................................................................6

*G&S Metal Consultants, Inc. v. Continental Casualty Co.*,
   2013 WL 4960404 (N.D. Ind. Sept. 10, 2013) .....................................................6

*GEFT Outdoors, LLC v. City of Westfield*,
   922 F.3d 357 (7th Cir. 2019) .........................................................................15, 18

*Gilbert v. Homar*,
   520 U.S. 924 (1997)...............................................................................................17

*Grant v. Trustees of Indiana Univ.*,
   870 F.3d 562 (7th Cir. 2017) ................................................................................19

*Haegert v. Univ. of Evansville*,
   977 N.E.2d 924 (Ind. 2012) ..................................................................................16

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982)...............................................................................................22

*Harris v. Brewer*,
   49 N.E.3d 632 (Ind. Ct. App. 2015)......................................................................9

*Hartman v. Keri*,
   883 N.E.2d 774 (Ind. 2008) ............................................................................16, 28

*Hillenbrandt v. Illinois Dep't of Nat. Resources*,
   347 F.3d 1014 (7th Cir. 2003) ..............................................................................21

*Johnson v. Advoc. Health & Hosps. Corp.*,
   892 F.3d 887 (7th Cir. 2018) ..................................................................................5

*Lesiv v. Illinois Cent. R.R. Co.*,
   39 F.4th 903 (7th Cir. 2022) ............................................................................24-25

*Lewis v. Wilkie*,
   909 F.3d 858 (7th Cir. 2018) ................................................................................24

*Mart v. Forest River, Inc.*,
   854 F. Supp. 2d 577 (N.D. Ind. 2012) ...................................................................8

*Mathews v. Eldridge*,
   424 U.S. 319 (1976)...............................................................................................19

*Moeller v. Bd. of Trs. of Ind. Univ.*,
   No. 1:16-cv-00446-JMS-MPB, 2017 WL 6603718
   (S.D. Ind. Dec. 27, 2017) ........................................................................................7

*Morrissey* v. *Brewer,*
    408 U.S. 471 (1972)............................................................................................15, 17

*Moss v. Martin,*
    473 F.3d 694 (7th Cir. 2007) ..............................................................................14

*Orr v. Westminster Vill. N., Inc.,*
    689 N.E.2d 712 (Ind. 1997) ............................................................................ 8-9

*Osteen v. Henley,*
    13 F.3d 221 (7th Cir. 1993) ................................................................................19

*Packer v. Trs. of Ind. Univ. Sch. of Med,*
    73 F. Supp. 3d 1030 (S.D. Ind. 2014)..................................................................7

*Poulard v. The Trustees of Indiana University, et al.,*
    2:16-cv-00115-JTM (N.D. Ind. 2018) ...............................................................23

*Powell v. Ind.,*
    2013 WL 1857118 (N.D. Ind. May 1, 2013) .......................................................6

*Reed v. Palmer,*
    906 F.3d 540 (7th Cir. 2018) ..............................................................................22

*Riano v. McDonald,*
    833 F.3d 830 (7th Cir. 2016) ..............................................................................19

*River Park, Inc. v. City of Highland Park,*
    23 F.3d 164 (7th Cir. 1994) ................................................................................16

*Siddique v. Laliberte,*
    972 F.3d 898 (7th Cir. 2020) .........................................................................22, 23

*Thuet v. Chicago Pub. Sch.,*
    No. 20 C 1369, 2020 WL 5702195 (N.D. Ill. Sept. 24, 2020)............................22

*United States v. James Daniel Good Real Property,*
    510 U.S. 43 (1993)...............................................................................................17

*Workman v. UPS Inc.,*
    234 F.3d 998 (7th Cir. 2000) ...............................................................................8

## *Statutes*

42 U.S.C. § 1981 ........................................................................................................28

42 U.S.C. § 1983 ...................................................................................................23, 28

42 U.S.C. § 1985 ...................................................................................................................23, 28

IND. CODE ANN. § 39-13-2-2 ...........................................................................................................14

### *Rules*

Federal Rule of Civil Procedure 56(a) ...............................................................................................5

Federal Rule of Civil Procedure 56(f)(1)..........................................................................................13

## <u>STATEMENT OF THE ISSUES</u>

1.    Whether Plaintiff has met his burden of establishing, without any material question of fact, that he is entitled to judgment as a matter of law on Plaintiff's breach of contract claim against IU?

The answer is **no.** Accordingly, Plaintiff is not entitled to partial summary judgment on this claim.

2.    Whether Plaintiff has met his burden of establishing, without any material question of fact, that he is entitled to judgment as a matter of law on Plaintiff's due process claims against IU, Iwama, and Roman-Lagunas?

The answer is **no.** Accordingly, Plaintiff is not entitled to partial summary judgment on this claim.

3.    Whether Plaintiff has met his burden of establishing, without any material question of fact, that he is entitled to judgment as a matter of law on Plaintiff's retaliation claims against IU, Iwama, and Roman-Lagunas in relation to Plaintiff's administrative appeal?

The answer is **no.** Accordingly, Plaintiff is not entitled to partial summary judgment on this claim.

<u>**DEFENDANTS' RESPONSE IN OPPOSITION TO**</u>
<u>**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**</u>

Defendants The Trustees of Indiana University ("IU"), Ken Iwama ("Iwama"), Vicki Román-Lagunas ("Román-Lagunas"), and David Klamen ("Klamen") request that Plaintiff's Motion for Partial Summary Judgment ("Motion") be denied in its entirety.[1]  Plaintiff attempts to obtain partial summary judgment on claims (on which he bears the burden of proof) that are deficient as a matter of law and/or concern matters involving genuine disputes of material fact.

The issues in this case arise from two categories of legitimate concern, both relating to the IU Northwest ("IUN") students and community.  ***First***, IU concluded that Plaintiff chose not to perform his job consistent with the job's requirements and the needs of students, exhibiting noncompliance with curriculum guidelines and significantly high DFW rates (meaning students being given Ds and Fs, and withdrawing) in classes he taught.  ***Second***, IU concluded that Plaintiff made threats of violence in violation of University policy.  Plaintiff's conduct was properly assessed under IU's Code of Academic Ethics (ACA-33).  To the extent Plaintiff wanted to appeal any decision or response, he had appeal rights to do so but did not exhaust them.

Prior to the close of discovery, Plaintiff moved for partial summary judgment on components of four counts on which Plaintiff bears the burden of proof.  (*See* Dkt. No. 36, pp. 1-2).  Plaintiff's Motion on those discrete points should be denied.  As a matter of law and fact, Plaintiff cannot meet his burden:

- IU did not breach any contract with Plaintiff when, under a specific IU policy, it removed Plaintiff's teaching responsibilities and reduced his salary for the Fall 2021 semester.  It also did not breach any contract with Plaintiff when it terminated Plaintiff's employment.  (Plaintiff's Count I);

---

[1] Defendants now respond to the points raised in Plaintiff's motion for partial summary judgment. Defendants will submit their dispositive motion after the close of discovery per the Court's schedule.

- IU, Iwama and Román-Lagunas did not violate any U.S. constitutional right to due process, including due to their involvement in the termination of Plaintiff's employment, and individual liability does not apply.  (Plaintiff's Count V); and

- IU, Iwama and Román-Lagunas did not retaliate against Plaintiff in violation of the First Amendment or the Civil Rights Act of 1866 in relation to Plaintiff's appeal of the decision to terminate his employment (Counts III and VII), and such claims are not appropriate against them.

Plaintiff's Motion focuses, at its core, on the policies and procedures of IU and IUN; Defendants' legitimate and good faith determinations of Plaintiff's misconduct and reckless and dangerous statements; and the opportunities for appeal that Plaintiff used—and elected not to use.  Plaintiff's Motion should be summarily denied.

## I.        STATEMENT OF FACTS, DISPUTED AND UNDISPUTED

Defendants responded to Plaintiff's statement of purported undisputed facts and provided a statement of additional facts relevant to Plaintiff's Motion in their pleading, Defendants' Response to Plaintiff's Statement of Material Facts, Evidentiary Objections, & Defendants' Statement of Additional Material Facts, which is incorporated by reference as if set forth fully herein along with its referenced exhibits.  Specifically, Defendants direct the Court also to Defendants' Statement of Additional Material Facts section within the aforementioned at ¶¶ 64-159 and any companion exhibits referenced therein.   An executive summary of relevant and material disputed facts is set forth below, highlighting several material fact issues that preclude summary judgment on Plaintiff's claims:

1.        Plaintiff was afforded due process with respect to his termination.  In September 2021, Plaintiff was terminated in exigent circumstances due to threats of violence that he was reported to have angrily made, stating that the only way to end racism is to kill all white people. (Defendants' Additional Material Facts, ¶¶ 115-159). Plaintiff exercised his right to appeal his termination decision to the Faculty Board of Review ("FBOR").  (*Id.* at ¶ 134).  Though able to do

so, Plaintiff chose not to further appeal his termination decision.  (*Id.* at ¶ 143; Jensen Decl., Ex. J, ACA-17).[2]  This decision was allowed by ACA-33 as a misconduct violation, and did not implicate separation policy ACA-52.

2.      None of the Defendants stopped Plaintiff's termination appeal or otherwise interfered in any way with any Plaintiff appeal, although Plaintiff alleges the opposite without factual support.  This entitles Defendants to summary judgment in their favor.  Otherwise, a genuine fact issue exists regarding the alleged event that Plaintiff identifies as the alleged material adverse action taken related to his employment that is the subject of his retaliation claims.

3.      IU's policies do not create any employment contracts and did not confer contract rights on Plaintiff.  (Ex. G, ¶ 9, Ex. 1, p. 15).  At all operative times, IU unambiguously disclaimed that its policies created any employment contract rights.  (*Id.*).

4.      IU did not breach any contractual promises to Plaintiff, including any related to the administrative action to temporarily remove Plaintiff's teaching duties for one semester along with that one component of his pay for one semester.  (Defendants' Additional Material Facts, ¶¶ 101-105).  This decision was allowed by ACA-33 as a violation of academic ethics, and did not implicate IUN's Post-Tenure Review Policy.  Tellingly, when Plaintiff was EVCAA, he likewise took administrative action under ACA-33 against a faculty member and removed their teaching responsibilities for one semester during an unpaid leave of absence and retained their salary within the department for one semester.  (*Id.* at ¶ 66).

---

[2] The cited materials are contained in a separate Appendix filed contemporaneously with this brief.  Initial references to evidence indicate the source and the exhibit reference in the Appendix (*e.g.*, Plaintiff's Deposition, Ex. A, p. __).  Thereafter, all references are to the exhibit number and page/paragraph (*e.g.*, Ex. A, p. __).

5.      In August 2021, following Plaintiff's receipt of two back-to-back inadequate teaching performance evaluations made by different supervisors, an alarming rate of students to whom Plaintiff gave D or F grades or who withdrew entirely from his class, and after Plaintiff participated in a course release that provided him with additional teaching resources and instruction, IUN took administrative action under ACA-33 for violations of academic ethics to temporarily remove Plaintiff's teaching duties for one semester along with that one component of his pay for one semester.  (*Id.* at ¶¶ 101-105).

6.      Plaintiff was afforded due process regarding the administrative decisions regarding his temporary removal from teaching and salary adjustment.  (*Id.* at ¶ 67; Ex. J, ACA-17).  He exercised his right to appeal these decisions to the FBOR.  (*Id.*).  Though able to do so, Plaintiff chose not to further appeal these decisions.  (*Id.*).

## II.      ARGUMENT AND AUTHORITIES

### A.    Summary Judgment Standard

The facts before the Court mandate denial of Plaintiff's motion for partial summary judgment.  Under FED. R. CIV. P. 56(a), the Court "must view the facts and make all reasonable inferences that favor them in the light most favorable" to Defendants.  *See Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (fact issues precluded summary judgment in race discrimination claim).  "[A] court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder…. Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*. at 893; *see also Daza v. State*, 331 F. Supp. 3d 810, 817 (S.D. Ind. 2018), *aff'd*, 941 F.3d 303 (7th Cir. 2019) (citations omitted) (granting Defendants' motion for summary judgment dismissing race discrimination and retaliation claims).

Further, summary judgment motions filed before the close of discovery, like Plaintiff's, are generally premature, warranting denial.[3]  *See Powell v. Ind*., 2013 WL 1857118, at *1 (N.D. Ind. May 1, 2013) (to the extent Plaintiff's motion "purports to be a motion for summary judgment, it is denied as premature.  The Court's procedure is to accept summary judgment briefings after the conclusion of discovery, which has not yet occurred in this case."); *G&S Metal Consultants, Inc. v. Continental Casualty Co*., 2013 WL 4960404, at *4 (N.D. Ind. Sept. 10, 2013) (determining that "counsel have prematurely begun to file dispositive motions[,]" including summary judgment motions where discovery is necessary); *see* V. Chisara Ezie-Boncoeur Declaration, Ex. K (identifying the multiple ongoing discovery items).  As such, this motion for summary judgment should be denied as premature.

**B.     IU did not breach any contract with Plaintiff when, under ACA-33, it removed Plaintiff's teaching responsibilities and reduced his salary for one semester.  It also did not breach any contract with Plaintiff when IU terminated Plaintiff's employment based on threats of violence (Count I).[4]**

Plaintiff's contract claims against IU each fail as a matter of law.  IU's policies were neither incorporated into Plaintiff's appointment letter, nor do they constitute standalone agreements. (Ex. G, ¶ 9, Ex. 1, p. 15).  Alternatively, material fact issues exist concerning the nature and scope of any contract rights between Plaintiff and IU.  *See, e.g., Franciscan All., Inc. v. Padgett*, 180 N.E.3d 944, 952 (Ind. Ct. App. 2021) ("… when a purported contract's terms are ambiguous or uncertain and its interpretation requires extrinsic evidence, its construction is a matter for the fact-finder.").

---

[3] The Court's July 1, 2022 Order (Dkt. No. 15), indicates that deadlines not listed will be set at a later date; the parties prior Rule 26 report had proposed a summary judgment deadline of 45 days following the close of discovery.  Discovery is scheduled to close on May 19, 2023.

[4] Count I: Breach of Contract.

      1.      **Plaintiff's appointment letter did not incorporate IU's employment policies.**

Plaintiff's first argument in support of his breach of contract claim is that his appointment letter, which he views as a contract, allegedly incorporated IU's employment policies.  (Dkt. No. 37, Plaintiff Memo, pp. 14-15).  This argument fails as a matter of law.  Plaintiff bases this argument on the following sentence in the appointment letter, which merely directs Plaintiff to non-binding and changing sources of general information: "Comprehensive information concerning academic policies, appointments and responsibilities can be referenced by following this link: http://policies.iu.edu/policics/categories/academic-faculty-studnets/index.shtml." (Plaintiff's Ex. 4).  Notably, the appointment letter does not state that the policies referenced in the link are binding on Plaintiff, nor terms of any contract with him.

Indiana courts have summarily and routinely disposed of the same arguments as Plaintiff's concerning the alleged existence of a contract derived from a university's academic policies.  For example, in *Packer v. Trs. of Ind. Univ. Sch. of Med*, 73 F. Supp. 3d 1030, 1041 (S.D. Ind. 2014), the Southern District dismissed a professor's claims that the University breached its policies, concluding that the policies did not give rise to an action for breach of contract, as the University's academic and tenure-related policies themselves did not constitute a contract, and the University's handbook explicitly disclaimed the creation of any such contract rights.  Years later, the same court found the same argument that University Policies allegedly conferred contract rights on a faculty member unavailing.  *Moeller v. Bd. of Trs. of Ind. Univ.*, No. 1:16-cv-00446-JMS-MPB, 2017 WL 6603718, at *17 (S.D. Ind. Dec. 27, 2017).  In *Moeller,* the Court determined that another dismissed faculty member could not rely on the "University's procedures for 'Permanent Separation for Academic Appointees,'" because the policies stated, "Statements and policies in this Handbook do not create a contract and do not create any legal rights...."  *Id.*  The Seventh

Circuit has held that such language "is a complete defense to a suit for breach of contract based on an employee handbook." *Workman v. UPS Inc.*, 234 F.3d 998, 1000 (7th Cir. 2000).

Plaintiff tries to avoid the application of these cases by alleging through inadmissible evidence that the webpage containing IU's employment policies did not have a disclaimer stating that the policies were not a contract until the summer of 2016. (Plaintiff's Brief, pp. 16-17; *see also* Response to Plaintiff's Statement of Material Facts, ¶¶ 1-7). However, for years, IU has maintained a conspicuous disclaimer on its website notifying its faculty members and the public at large that its policies do not constitute contracts. (Jennifer Kincaid Decl., Ex. G, ¶ 8). Further, IU has maintained an Academic Handbook ("Handbook") first in paper form and then on its website with the conspicuous introductory statement:

> Statements and policies in this Handbook do not create a contract and do not create any legal rights. In the event of differences between this document and the original documents cited therein, the wording in the original documents or master contracts shall obtain.

(Ex. G, ¶¶ 4, 6). The Handbook also contained IU academic policies. (*Id.* at ¶ 2). An archived version of the website that published the 2008 Academic Handbook containing the foregoing disclaimer language applicable when Plaintiff began his employment is still available online. (*Id.* at ¶ 5). Since at least 2008, predating Plaintiff's 2015 employment, IU has maintained the position that its academic policies do not create a contract of employment between IU and persons with academic appointments. (Ex. G, ¶ 9).

IU maintained the Handbook and the unambiguous disclaimer on its website when Plaintiff began working for IU in 2015. (Ex. G, ¶¶ 3-6, 9). However, even if there were no disclaimer, Plaintiff acknowledged that his appointment letter would only incorporate the policies from the link if they contained a "clear promise"; none of the policies do. (Dkt. No. 37, p. 12 (citing *Mart v. Forest River, Inc.*, 854 F. Supp. 2d 577, 588-589 (N.D. Ind. 2012); *Orr v. Westminster Vill. N.,*

*Inc.*, 689 N.E.2d 712, 721 (Ind. 1997); *Cmty. Found. of Nw. Indiana, Inc. v. Miranda*, 120 N.E.3d 1090, 1100 (Ind. Ct. App. 2019); *Harris v. Brewer*, 49 N.E.3d 632, 642 (Ind. Ct. App. 2015)). Here, each of the policies on IU's website lists dates when IU last revised the policies, indicating that the policies are not static. (*See* Ex. G, ¶ 8; Ex. J, ¶ 3). When revising policies, IU does not negotiate with, or provide monetary or other consideration to, individual employees, and it updates policies with the involvement of the University Faculty Council, and not the faculty at large. (*See* Ex. G, ¶ 8; Ex. J, ¶ 3; Ex. C, ¶ 5).

To the extent Plaintiff suggests that he viewed policies on IU's website in 2015, he would have seen policy effective dates and revision dates, most of which listed revisions dates. (Ex. G, ¶ 8; Ex. J, ¶ 3). The obvious meaning of the revision dates is that the policies would periodically change without his or any other individual faculty member's consent, preventing Plaintiff from reasonably believing that the policies at a moment in time constituted a contract between him and IU.

Above all and in any event, Plaintiff's appointment letter did not explicitly incorporate IU policies. Plaintiff notes the letter said that certain terms were "required" by University policy or "in accordance with" University policy (Dkt. No. 37, p. 14); however, this is not a "clear promise" to include all policies in his appointment letter going forward (and particularly those generally referenced at a link). The inclusion of a web address where the policies at the time (with clear revision dates) "can be referenced" is not a "clear promise" to provide any binding agreement concerning those policies, unchanged, going forward as a matter of contract.

**2.     IU's employment policies do not constitute any form of standalone employment contract.**

Implicitly recognizing the weakness of his argument that his appointment letter somehow incorporated by reference IU policies, Plaintiff next argues that the policies themselves constitute

standalone contracts.  (Dkt. No. 37, pp. 15-16).  But this argument fails for the same reasons, namely, the employee Handbook disclaimers addressed above.  Plaintiff concedes that the online policies themselves contained an explicit disclaimer from at least 2016 onward.  Further, the appointment letter does not make any implicit or express promises related to the web page link merely included as a point of reference to general information about various IU matters.  Finally, revision dates in the policies preclude the suggestion that the policies themselves were a "clear promise" to Plaintiff.  Plaintiff's argument that he reviewed policies at a link does not make those policies contractual.

3.      **Plaintiff's arguments fail, as a matter of law, to establish that IU had a contractual obligation to Plaintiff to comply with its academic policies or that IU did not follow material policies.**

Plaintiff's arguments fail, as a matter of law, to establish that IU had a contractual obligation to Plaintiff to comply with its academic policies.  At best for Plaintiff, there are factual and legal questions concerning the contents of Plaintiff's appointment letter and the meaning and interchange of various IU policies that preclude summary judgment.  Otherwise, Defendants are entitled to summary judgment on this point, because as a matter of law no contract rights exist nor were breached.

Further, Plaintiff incorrectly contends that a Post-Tenure Review and Enhancement Policy informed IU's administrative decision regarding his temporary removal from teaching and related pay adjustment, when ACA-33 was the applicable policy that informed this administrative decision.  (Dkt. No. 37, pp. 17-18; Response to Plaintiff's Statement of Material Facts, ¶ 16). IUN's post-tenure review policy was inapplicable to the administrative decision concerning Plaintiff's removal from teaching for one semester and corresponding pay adjustment, because the policy expressly focuses on two small groups of faculty and librarians who:  (a) seek a change in career direction or emphasis, or (b) are failing to meet minimum levels of performance.  (Ex. C,

¶ 10). The pervasive issues that resulted in Plaintiff's removal from teaching in Fall 2021 for one semester and corresponding salary adjustment do not fall within either category covered by IUN's post-tenure review process, and do not consist of a failure by Plaintiff to meet minimum levels of performance.

Plaintiff received an inadequate IUN teaching evaluation for the 2017 academic year from the then-Communications Chair Bonita Neff dated March 2018. (Ex. D, ¶ 8). During Plaintiff's 2017 teaching, students either received grades of a D, F, or withdrew from his class at an alarming rate. (*Id*.). Plaintiff then received another inadequate IUN teaching evaluation on August 3, 2021, rating Plaintiff as inadequate in teaching and in service. (Ex. D, ¶¶ 28-30).

Plaintiff's performance issues are not a reflection of his failure to meet minimum levels of performance. To the contrary, the summary judgment record indicates that Plaintiff made deliberate choices to disregard critical aspects of his job leading IUN to conclude that he engaged in a violation of the academic ethics covered by ACA-33.

For example, IUN had in-person class requirements at various points during Plaintiff's employment through 2021. (Ex. D, ¶ 12). Plaintiff did not have the authority to change the format of his scheduled classes to be remote. (*Id*. at ¶ 14). Notwithstanding this, for the 2020-2021 academic year, to the best of IUN's knowledge, Plaintiff did not physically return to work at IUN at its Gary, Indiana location, despite having scheduled in-person classes. (*Id*. at ¶ 12).

More alarming, however, was the impact Plaintiff was having on student success. IUN regularly monitors the rates at which students receive grades of D, F, or withdraw from a professor's course. (Ex. D, ¶ 22). IUN refers to this rate as the "DFW" rate. (*Id*.). Plaintiff's DFW rate for the 2020-2021 academic year was remarkably higher than the rates of his peers and higher than his 2017-2018 rate. (*Id*. at ¶ 23). Most students who took Plaintiff's courses received

a D, F, or withdrew from his course, and many did not return to IUN as students.  (*Id*.).  Of particular concern, only 30 of the 96 total students that Plaintiff taught in 2020-2021 returned to IUN as students.  (*Id*.).

Following receipt of his second inadequate performance review which asked Plaintiff to provide a response to the deficiencies noted in the review, on August 9, 2021, Plaintiff responded to some but not all of the questions asked, and in large part in a manner that deflected his responsibility and blamed the students for the disproportionate failure of his classes.  (Ex. D, ¶ 26).  By way of example only, although Klamen's evaluation email raised concerns about Plaintiff's failure to contact any of the students in one of his online fall semester high school dual-credit sections, Plaintiff's response ignored this point and instead alleged that he contacted one high school student in his spring semester section.  (*Id*.).  In reality, Plaintiff had only contacted this student in the spring semester following Klamen's request that IUN staff instruct Plaintiff to contact his students, having failed to already do so. (*Id*.).  Most troubling to Klamen was Plaintiff's lack of responsibility for the disproportionately high and steadily increasing number of students who received DFWs in his classes.  (*Id*.).  IUN faculty are assessed based on criteria including their service, teaching, and research.  (Ex. D, ¶ 15).  In his Faculty Annual Report, Plaintiff reported no service activity during the 2020-2021 academic year.  (*Id*. at ¶ 17). Plaintiff also disregarded his faculty responsibility to provide student performance feedback via Student Evaluation Reports (SER reports) every two weeks, which if done, might have prevented the significant rate of students who received D or F grades or withdrew from his classes. (Ex. D, ¶ 29.) Plaintiff did not provide Student Evaluation Reports (SER reports) for any IUN students who took his classes during 2020.  (*Id*. at ¶ 19).  Plaintiff did not provide any SER reports for IUN students

who took his class during 2021 without withdrawing (*i.e.*, those students who remained in his class and received grades).  (*Id*. at ¶ 20).

In 2020, Plaintiff was provided a course release from some of his teaching obligations that provided Plaintiff with additional time, teaching resources and instruction, in particular given performance problems that Plaintiff had with teaching, and IUN's transition to some hybrid in person and remote online classes due to the COVID-19 pandemic.  (*Id*. at ¶ 27).  IUN invested in Plaintiff in providing him this course release, which was not provided to every other professor. (*Id*.).

In sum, the examples provided above give context for IUN's decision to view Plaintiff's conduct as a violation of the academic code of ethics in ACA-33 and not a failure to meet minimum levels of performance implicating any post-tenure review process.  Among other things, the administrative decision regarding Plaintiff's teaching assignment and pay constituted ethics violations under ACA-33, which states in pertinent part as follows:

> The University's educational mission is promoted by professionalism in faculty/student relationships.  Professionalism is fostered by an atmosphere of mutual trust and respect.  Actions of faculty members and students that harm this atmosphere undermine professionalism and hinder fulfillment of the University's educational mission.

(Plaintiff's Ex. 14 at IU1 1328-29).  ACA-33 allowed among possible sanctions for violations of the policy, forms of "reprimand" and "retention of salary."  (Ex. J, Ex. 3, p. 7, at ACA-33 § (B) Enforcement Procedures (b) Administrative Action on Violations of Academic Ethics).  This policy is a material part of Plaintiff's breach of contract claim.  To the extent that partial summary judgment should be granted, it should be granted in Defendants' favor.  Fed. R. Civ. P. 56(f)(1). Otherwise, fact issues preclude summary judgment.

**C.      As a matter of law and fact, IU, Iwama, and Román-Lagunas did not violate Plaintiff's constitutional right to due process protection in relation to the termination of Plaintiff's employment (Count V).**

Plaintiff targets IU, Iwama, and Román-Lagunas with a claim of violation of due process, likely because Plaintiff's contract claims are not actionable against individual defendants as a matter of Indiana law, which precludes contract liability against public officials.  IND. CODE ANN. § 39-13-2-2.  However, Plaintiff was not subject to any deprivation of his right to due process when IU terminated his employment in light of his incendiary, violent comments.  Plaintiff has not, as a matter of law, been deprived of any property interest without due process or contrary to applicable law.  As a matter of law, Plaintiff cannot state such claims against IU, Iwama and/or Román-Lagunas.

**1.      Plaintiff was not, as a matter of law or fact, deprived of any property interest without due process or contrary to applicable law.**

***First***, Plaintiff was not, as a matter of law or fact, deprived of any property interest without due process or contrary to applicable law.  Property interests are not inherent in the U.S. Constitution.  Rather, they are created and defined by state law.  *See Cheli v. Taylorville Cmty. Sch. Dist.*, 986 F.3d 1035, 1039 (7th Cir. 2021) (addressing a collective bargaining agreement) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972); *Bishop v. Wood*, 426 U.S. 341, 344 (1976) ("[T]he sufficiency of the claim of entitlement must be decided by reference to state law.")).  The determination of whether Plaintiff had a protected property interest in his employment is in reference to Indiana law, here Indiana contract law.  *See Moss v. Martin*, 473 F.3d 694, 700 (7th Cir. 2007).

After IU's decision to temporarily remove Plaintiff from teaching, it was reported on September 2, 2021, to Román-Lagunas that Plaintiff reached out to another member of the faculty while angry and upset.  Specifically, Román-Lagunas learned that Plaintiff stated, at least three

14

times, that "the only way to end racism is to kill all the white people." (Ex. C, ¶ 25). The reporting professor also believed that these statements were made directly in response to the administrative action to remove Plaintiff from teaching in the Fall of 2021. (Ex. A, pp. 132:9-133:3). A week later, on or about September 9th, Román-Lagunas was again alerted to another safety issue involving Plaintiff. (Ex. D, ¶ 38). Klamen stated that he had been confidentially advised by a different faculty member that he should avoid Plaintiff for fear that an "incident" may result and that he should be very concerned if he were to encounter him in person. (Ex. D, ¶ 37).

IU and Defendants Iwama, and Román-Lagunas determined, based on available evidence, that Plaintiff made violent threats in violation of IU policy ACA-33. Recognizing the seriousness of these allegations and the need to act promptly to prevent the possibility of campus violence, they made the decision to terminate Plaintiff's employment, as his actions constituted personal and professional misconduct in violation of ACA-33. Plaintiff's employment with IU was immediately terminated on September 14, 2021. Defendants agree that no pre-termination hearing occurred, but state among other things that: (1) no pre-separation hearing was required and (2) with exigent circumstances such as those presented here, a post-termination review is sufficient, particularly as the applicable policy (ACA-33) does not mandate otherwise. "It is by now well established that 'due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria & Restaurant Workers v. McElroy,* 367 U.S. 886, 895 (1961). "Due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey* v. *Brewer,* 408 U.S. 471, 481 (1972).

To the extent the Plaintiff alleges that IU procedures were not followed, there is no federal procedural due process right to state-mandated procedures. *See GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 365 (7th Cir. 2019); *Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*,

741 F.3d 769, 773 (7th Cir. 2013); *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 166-167 (7th Cir. 1994) (plaintiff "may not have received the process [the state] directs its municipalities to provide, but the Constitution does not require state and local governments to adhere to their procedural promises").

Further, "in the context of educational institutions, as long as the process is reasonably transparent and fair and affords the subject an opportunity to respond ... the ultimate issue focuses less on the particular process and more on the recognition of the institution's interest in assuring a proper educational environment." *Hartman v. Keri,* 883 N.E.2d 774, 777-778 (Ind. 2008); *Haegert v. Univ. of Evansville*, 977 N.E.2d 924, 951 (Ind. 2012).  This includes limiting the opportunity to respond until after termination.  *Barszcz v. Bd. of Comm. College*, 400 F. Supp. 675, 678 (N.D. Ill. 1975) (tenured professor not entitled to pre-termination hearing after deception over his master's degree).

Here, Plaintiff cannot establish that he was deprived of any required due process as a matter of law.

### 2. Plaintiff's employment was terminated due to exigent circumstances under ACA-33 and pre-termination notice was not required given the exigent circumstances surrounding Plaintiff's threats of violence.

The employment decisions at issue related to Plaintiff's termination were made under ACA-33, which allows for termination and immediate dismissal for various offenses, including:[5]

> Section III. 20.(b):  Physical behavior that involves an express or implied threat to interfere with an individual's personal safety, academic efforts, employment, or participation in university-sponsored extracurricular activities or causes the person to have a reasonable apprehension that such harm is about to occur; or

---

[5] ACA- 33 applied to Plaintiff because among other things pursuant to its preamble, "The provisions of this Code apply to persons whose service to the University includes teaching, scholarship, librarianship, and academic administration.  Such persons are referred to in the Code as 'Academic Personnel.'  References in the Code to 'Faculty' include tenured members of the faculty, librarians, and persons whose service to the University may lead to tenure."

Section III. 21.(a):  An express or implied threat to interfere with an individual's personal safety, academic efforts, employment, or participation in university-sponsored activities and under the circumstances causes the person to have a reasonable apprehension that such harm is about to occur

Section III. 21.(b):  'Fighting words' that are spoken face-to-face as a personal insult to the listener or listeners in personally abusive language inherently likely to provoke a violent reaction by the listener or listeners to the speaker.

(Dkt. No. 39-24, Plaintiff's Ex. 25).  For the above reasons, and given the urgency of the circumstances warranting Plaintiff's termination, ACA-52 which concerns certain circumstances concerning the permanent separation of academic appointees did not apply to his termination decision.  (Dkt. No. 39-27, Plaintiff's Ex. 28).

There was no violation of Plaintiff's due process rights when IU, Iwama, and Román-Lagunas acted decisively in electing to terminate his employment due to his threatening behavior. When faced with exigent circumstances, such as potential harm to others, and the need to act quickly, it is appropriate for an institution to move quickly and make necessary decisions.  Indeed, ACA-33 contains no temporal requirement for any process and/or hearing.

Due process "is not a technical conception with a fixed content unrelated to time, place and circumstances."  *McElroy,* 367 U.S. at 895.  "Due process is flexible and calls for such procedural protections as the particular situation demands."  *Morrissey,* 408 U.S. at 481.  "[W]here a State must act quickly, or where it would be impractical to provide pre-deprivation process, post-deprivation process satisfies the requirements of the Due Process Clause."  *See, e.g., Gilbert v. Homar,* 520 U.S. 924, 930-931 (1997) (citing *United States v. James Daniel Good Real Property,* 510 U.S. 43, 53 (1993)).

**3.**      **Plaintiff received and has had access to appropriate due process.**

In accordance with ACA-33, Plaintiff was afforded the opportunity to appeal his termination to the Faculty Board of Review ("FBOR"), which he did on October 12, 2021.  (Dkt.

No. 39-1, Plaintiff's Ex. 1, ¶ 11; Ex. 31 at McPhail161-67).   On April 20, 2022, the FBOR concluded its review of Plaintiff's termination appeal, ultimately disagreeing with the decision made by IUN to terminate Plaintiff's employment but not recommending that Plaintiff's employment be reinstated ("FBOR Termination Opinion").   (Ex. C, ¶ 33; Dkt. No. 39-7; Dkt. No. 39-9, Plaintiff's Ex. 8; Ex. 10, ¶ 42).   The FBOR Termination Opinion makes clear that Plaintiff and others were interviewed as part of his termination appeal process, which afforded him the opportunity to be heard (Plaintiff's Ex. 31 at p. 2).

"The essential requirements of due process ... are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement."   *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) (tenured public employee).   The employee "is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."   *Id*.   The opportunity to be heard "need not be elaborate."   *Id*. at 545.   In addition, when a plaintiff alleges a liberty or property right deprivation based on conduct that is random and unauthorized, the State satisfies procedural due process requirements so long as it provides a meaningful post-deprivation remedy.   *GEFT Outdoors, LLC*, 922 F.3d at 365.   It is undisputed that Plaintiff engaged in a post-termination appeal.   He had a meaningful post-deprivation remedy.

Plaintiff received written notice of the non-termination related charges against him, and of the termination charges against him, and had the opportunity to tell his story through the FBOR appeal he filed, a process that neither Román-Lagunas nor Iwama control.   Additionally, Plaintiff did not attempt to further appeal his employment termination decision following the April 20, 2022, FBOR Termination Opinion, although he continues to have the ability to do so.   (Ex. C,

¶¶ 40-45).  According to IU policies and procedure ACA-04, Plaintiff could have appealed his termination decision to the President of IU and the Board of Trustees, which he did not do.  (*See* ACA-04 at § 5.1(D), Ex. J, ¶ 5, Ex. 1).  Further, Plaintiff did not send Román-Lagunas, Iwama nor IU any correspondence regarding or presenting any post-termination appeal following the Faculty Board's findings regarding his employment termination.  (Ex. C, ¶ 43; Ex. F, ¶ 18).  Plaintiff did not exhaust his appellate rights concerning his employment termination, including those available related to his post-termination appeal.  (Ex. F, ¶¶ 16-19).  *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 571 (7th Cir. 2017) ("Generally, the adequacy of the post-termination process informs our analysis of the sufficiency of the pre-termination process.  However, Grant's 'decision to bow out of the post-termination hearing—a decision he made freely—forecloses his due process claim to the extent it is premised on that hearing.'") (citations omitted).  The question is not whether there was perfect compliance with IU's rules.  *Id*.  As the Seventh Circuit explained in *Grant*, "We have tirelessly reminded litigants that our determination of whether the requirements of *federal* due process were satisfied is different from a determination of whether there was perfect compliance with an institution's rules."  *Id*.  Focusing on handbook policies, the court advised, "[t]he process outlined in the IUSB handbook does not constitute the process required by the federal Constitution.  *See Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir. 1993)."  *Id.*  "Instead, due process 'is flexible and requires only such procedural protections as the particular situation demands.'  *Riano v. McDonald*, 833 F.3d 830, 834 (7th Cir. 2016) (citation and quotation marks omitted)."  As the court explained in *Grant*, "The cornerstone of due process is notice and the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Id.*, citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation and quotation marks omitted).  Here, Plaintiff was afforded notice of the circumstances causing his termination and a meaningful opportunity to

challenge the decision and be heard through the second FBOR appeal that Plaintiff filed concerning this matter that resolved. Plaintiff has effectively acknowledged that he received due process in the form of a post-termination appeal.  Plaintiff concedes that he exercised due process rights when he appealed his termination decision to the FBOR, which rendered an opinion on the matter.  (*See* Dkt. No. 37, Plaintiff's Brief in Support of Motion for Summary Judgment, p. 3). And as set forth further below, no one interfered with his post-termination appeal.

Finally, to the extent the Court disagrees, and finds that: (1) any claims are proper against any Defendants, and that (2) Plaintiff was deprived of a protected interest, the Court must then determine what process "was due."  Plaintiff is not entitled to his demand for reinstatement of position and money damages. The applicable remedy, if any, should be a termination hearing.

### 4.  Plaintiff also received due process with respect to the administrative decision to remove him from teaching for one semester and correspondingly adjusting his salary for one semester.

The Motion suggests that Plaintiff is moving for partial summary judgment on due process challenges related to his termination.  To the extent McPhail also seeks partial summary judgment on due process challenges related to the administrative decisions made under ACA-33 to remove him from teaching for one semester and a temporary corresponding salary adjustment, such a due process claim fails on most of the same grounds set forth above.  IUN took this administrative action considering that McPhail's conduct as detailed further in his 2021 faculty evaluation violated IU's academic ethics.  (Ex. C, ¶ 19; Ex. D, ¶ 30).

Plaintiff was afforded notice and a detailed explanation of the charges and evidence against him in relation to the administrative decisions regarding this matter, and a meaningful opportunity to challenge the decision and be heard through the FBOR appeal that Plaintiff pursed concerning this matter that resolved.  (Ex. C, ¶¶ 1, 9).  IUN did not reverse this administrative decision, as it is allowed to do. IUN is not required to follow recommendations issued by the FBOR or adopt or

agree with its findings.  IUN has the express right to depart from the FBOR's recommendations when it comes to administrative decisions.  (Ex. C, ¶ 20; Ex. F, ¶ 13).  Plaintiff exercised his due process rights regarding these separate administrative decisions.  (*Supra* at cases cited on pages 13-15).

> **5.**     **Neither Iwama nor Román-Lagunas is individually liable.  To the extent Plaintiff argues otherwise, material fact issues exist precluding partial summary judgment.**

Plaintiff broadly argues, as a matter of law, that Román-Lagunas and Iwama face individual liability (*i.e.*, they are not entitled to qualified immunity), because constitutional violations are alleged and Román-Lagunas and Iwama participated in the termination decision.    Citing *Hillenbrandt v. Illinois Dep't of Nat. Resources*, 347 F.3d 1014 (7th Cir. 2003), Plaintiff assumes a "constitution deprivation" and ignores various facets that are applicable.  (Dkt. No. 37, Plaintiff's Brief, p. 5, citing *Hillenbrandt*).  Plaintiff's argument is deficient.

*First*, Plaintiff cannot, as a matter of law and based on facts of record, establish that Plaintiff was deprived of due process.  Indeed, Plaintiff was provided post-termination review allowed by ACA-33, which does not include a temporal requirement for when due process must occur.  (Dkt. No. 37-24, Plaintiff's Ex. 25, ACA-33(B)(c) (Without stating any required time period, states "Appointees also have the rights of hearing and appeal provided by any other procedure of the University for the review of administrative action")).  Plaintiff initiated an appeal of his employment termination decision, which neither Román-Lagunas nor Iwama could control or stop.  (Ex. C, ¶ 22; Ex. F, ¶ 16; *see also* Dkt. No. 37-1, Plaintiff's Ex. 1, ¶ 11; Dkt. No. 37-30, Ex. 31 at McPhail 161-67).

*Second*, as a matter of law and based on the record, Román-Lagunas and Iwama are entitled to qualified immunity.  Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."  *Ashcroft v. al-Kidd*, 563 U.S.

21

731, 743 (2011).  Under this doctrine, courts may not award damages against a government official in his personal capacity unless "the official violated a statutory or constitutional right," and "the right was 'clearly established' at the time of the challenged conduct."  *Id.* at 735.  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.... A state official is protected by qualified immunity unless the plaintiff shows:  (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." [6]  *Reed v. Palmer*, 906 F.3d 540, 546 (7th Cir. 2018) (internal quotation marks omitted); *Thuet v. Chicago Pub. Sch.*, No. 20 C 1369, 2020 WL 5702195, at *3 (N.D. Ill. Sept. 24, 2020).  Plaintiff contends that these requirements for liability are met, but his argument is incorrect as a matter of law.  Plaintiff cannot destroy these individual defendants' qualified immunity as a matter of law or fact.

Román-Lagunas and Iwama made the decision to separate Plaintiff under exigent circumstances in order to protect the safety and welfare of IUN.  There was no clearly-established violation of a constitutional right at the time of this challenged conduct.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Plaintiff bears the burden of demonstrating the right was clearly established when the violation occurred, such that a reasonable public official would have known his conduct was unlawful.  *Siddique v. Laliberte*, 972 F.3d 898, 902-903 (7th Cir. 2020).  This he cannot do.

Román-Lagunas and Iwama followed ACA-33 in making their decision.  To the extent that Plaintiff alleges there was a misapplication of that or any other policy, Plaintiff's argument fails.

---

[6] Plaintiff lacks any evidence establishing these points with respect to any claims of individual liability against Iwama, Román-Lagunas, or Klamen.

Plaintiff cannot merely allege that the Defendants failed to follow a university policy or procedure. *See Davis v. Scherer*, 468 U.S. 183, 194 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some [state] statutory or administrative provision.") (cited in *Siddique v. Laliberte*, 972 F.3d at 904). Indeed, Plaintiff as a former IUN EVCAA relied upon the same policy used by Defendants in this case (ACA-33) for faculty member misconduct where he suspended the (teaching and pay) of a faculty member. *See Poulard v. The Trustees of Indiana University, et al.*, 2:16-cv-00115-JTM (N.D. Ind. 2018).

To the extent that Plaintiff factually argues otherwise in relation to any alleged deprivation of due process or alleged individual liability, material fact issues exist that preclude partial summary judgment.

**D.     IU, Iwama and Román-Lagunas did not terminate Plaintiff's post-appeal process, and did not retaliate against him in violation of the First Amendment in relation to any post-dismissal appeal process (Count III: First Amendment Retaliation: 42 U.S.C. §§ 1983, 1985 Against All Defendants)[7]**

**1.     Disputed material facts preclude summary judgment on Plaintiff's retaliation claims alleged as Counts III and VII.**

Plaintiff bases his retaliations claims (Counts III and VII) on a single alleged adverse action that problematically for his claims, never happened. Relying on pure speculation, Plaintiff contends that "Román-Lagunas revoked Plaintiff's right to appeal his termination, with Iwama's acquiescence." (Dkt. No. 37, pp. 10-11; *see id.* at p. 9). No appeal was terminated or revoked by IU, Iwama, or Román-Lagunas, and Plaintiff creates a material fact issue in alleging otherwise. (Ex. C, ¶¶ 17-23; Ex. F, ¶ 16).

---

[7] Although the Complaint lists Count III as including First Amendment Retaliation claims under 42 U.S.C. §§ 1983, 1985 Against All Defendants, Plaintiff's partial summary judgment Motion does not appear to move on 42 U.S.C. § 1985, nor does the complaint assert any facts concerning a conspiracy. Because of this, Defendants do not address matters concerning 42 U.S.C. § 1985, and reserve the right to respond to any argument that Plaintiff might make regarding this when made.

There is *no* undisputed evidence in the record that Román-Lagunas, IU, or Iwama revoked, interfered, or otherwise stopped Plaintiff's right to appeal his termination.  (*Id*.).  This threshold issue precludes summary judgment on Plaintiff's retaliation claims asserted as Counts III and VII because a genuine and outcome determinative fact issue exists concerning whether or not the Defendants took any adverse action related to Plaintiff's termination appeal.  *Davis v. Munster Med. Rsch. Found., Inc.*, 213 F. Supp. 3d 1074, 1091 (N.D. Ind. 2016) (denying summary judgment on FMLA retaliation claim because the Court "finds that a genuine issues of fact exist as to whether Davis's reassignment ***was a materially adverse action***") (emphasis added).

The Court's summary judgment analysis regarding the retaliation claims can stop due to the existence of material fact issues concerning the alleged adverse action on which Plaintiff bases these claims.  To the extent the Court desires to assess these claims further, they should be denied because Plaintiff failed to satisfy the elements of a retaliation claim.

**2.    In addition to fact issues, Plaintiff failed to satisfy the elements of his retaliation claims.**

To establish retaliation Plaintiff "must offer evidence from which a reasonable jury could find:  '(1) he engaged in an activity protected by the statute; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action.'"  *Lesiv v. Illinois Cent. R.R. Co*., 39 F.4th 903, 911 (7th Cir. 2022) (quoting *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018)).  "Knowledge of the protected activity is necessary to show causation for a retaliation claim."  *Id*. at 915-916.  Further, "[f]or a retaliation claim, a materially adverse action is defined as an action 'that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity.'"  *Id*. at 911-912 (citations omitted).  "The evidence presented 'must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself .... Evidence is evidence.

Relevant evidence must be considered and irrelevant evidence disregarded.'" *Id.* at 911 (citations omitted).

> a.   **Plaintiff did not suffer any material adverse action, nor is any causal link provided.**

In a conclusory leap, Plaintiff contends that Román-Lagunas' May 31, 2022, letter following the April 20, 2022, FBOR Termination Opinion somehow confirms that she or IU stopped his termination appeal. (Dkt. No. 37, pp. 10-11). This argument fails for several reasons summarized below. Simply put, IU, Iwama, and Román-Lagunas did not terminate or revoke Plaintiff's appeal of his termination decision. (Ex. C, ¶¶ 17-23; Ex. F, ¶ 16). The only material adverse action that Plaintiff contends occurred is IU, Iwama, and Román-Lagunas interfering with his termination appeal, but that did not happen. (*Id.*). Accordingly, there is no material adverse action to support Plaintiff's retaliation claim and any summary judgment on this claim should be in Defendants' favor.

The FBOR identified a tension between Plaintiff's termination appeal requests for both reinstatement and a settlement, and accordingly the FBOR Termination Opinion made the following recommendation which is highlighted for emphasis, with which Iwama and Román-Lagunas Declaration did not disagree:

> There seems to be a tension between the components of the remedy McPhail proposes. Points 1 and 2 speak to reinstatement whereas point 3 speaks to separation and a settlement. We speculate that, at this point, what McPhail may want more than anything else is an "equitable and honorable" separation from Indiana University. We urge our campus Administration and all other applicable offices of Indiana University to work with Dr. McPhail and his representatives to reach a settlement that is honorable and acceptable to him.

(Ex. C, ¶ 33; *see also* Plaintiff's Ex. 7, at McPhail 0255-0262.).

EVCAA Román-Lagunas was not opposed to IU working towards reaching an amicable settlement with Plaintiff and agreed with this specific aspect of the FBOR Termination Opinion.

(*Id*. at ¶ 34).[8]   Because IUN did not disagree with the specific recommendation in the FBOR

Termination Opinion that urged IU to reach a settlement with Plaintiff and not reinstate his

employment, no final written decision from her office or the Chancellor's office as contemplated

by ACA-17 was required regarding Plaintiff's termination appeal.   (*Id*. at ¶ 36; Ex. L, pp. 198:15-

199:1).   That said, on or about May 31, 2022, EVCAA Román-Lagunas still responded to both

Plaintiff and the FBOR in writing.   (Ex. C, ¶ 37).   EVCAA Román-Lagunas saw the ongoing

litigation regarding this matter as a separate process in which attempting to reach a settlement like

the one recommended by the FBOR Termination Opinion could have been a possibility.   (*Id*.).

EVCAA Román-Lagunas viewed the litigation as a totally distinct process from Plaintiff's IU

administrative termination appeal process.   (*Id*.).   When she sent the letter on or about May 31,

2022, she did not intend to stop any aspect of Plaintiff's termination appeal process, nor did her

letter stop any aspect of Plaintiff's termination appeal process.   (*Id*.).

The May 2022 response sent by Román-Lagunas regarding the FBOR's opinion

concerning Plaintiff's termination appeal did not stop any appeal process under applicable policies,

nor could it.   (Ex. C, ¶ 20).   The FBOR to which Plaintiff appealed is an independent board (Ex.

F, ¶ 12) that none of the Defendants is a member of or has the ability to end an appeal process

unilaterally.   (Ex. C, ¶ 22; Ex. F, ¶ 12; Ex. D, ¶ 40).   EVCAA Román-Lagunas did not terminate

any appeal process involving Plaintiff.   Further, her response did not stop any appeal process under

applicable policies, nor could it.   (Ex. C, ¶ 22).   EVCAA Román-Lagunas, Chancellor Iwama, and

IU did not retaliate against Plaintiff or take any adverse action against him for any reason.   None

of the Defendants retaliated against Plaintiff or took any adverse action against him because he

---

[8] EVCAA Román-Lagunas did not think that any settlement, if it could be achieved, would include any admission of wrongdoing; Román-Lagunas viewed and still views Plaintiff's reported threats as egregious. (*Id*. at ¶ 35).   Her role is to protect the health and safety of all members of IUN's community.   (*Id*.).

filed this lawsuit that is now pending in federal court.  (Ex. C, ¶ 41; Ex. F, ¶¶ 25-26).  None of the Defendants interfered in any way with any appeal process involving Plaintiff.  (Ex. C, ¶ 44; Ex. D, ¶ 41; Ex. F, ¶ 16; Ex. L, p. 198:4-13).

Further, Plaintiff did not suffer any material adverse action related to his termination appeal because he is still able to continue appealing this decision.  Plaintiff did not exhaust his appeal rights concerning his termination, including those available related to his post-termination appeal.  (*Supra* at pp. 18-19; Ex. F, ¶¶ 17, 19; Ex. J, ¶ 9, Ex. 5).

Considering that none of the Defendants stopped or interfered in any way with any appeal process regarding Plaintiff, Plaintiff failed to prove a causal connection between the email that he identifies as support for Román-Lagunas, Iwama and IU allegedly stopping his termination appeal, the event which Plaintiff contends constitutes a materially adverse action.  (Defendants' Additional Material Facts, ¶ 143).

### b. There is no individual liability against Iwama or Román-Lagunas (or Klamen though he is not part of the Motion).

***First,*** the same legal principles discussed above preclude an individual liability finding against Iwama and Román-Lagunas (and Klamen) with respect to Plaintiff's retaliation claims.  (*Supra* at pp. 17-18).  There are no facts in the record that confirm Plaintiff's conclusory theory that IU, Iwama and Román-Lagunas took material adverse action against Plaintiff with respect to his termination appeal at all, let alone due to this lawsuit.  Because of this Plaintiff's alleged constitutional violation related to his free speech cannot prevail.  (Plaintiff's Brief, pp. 7-9).

***Second***, as a matter of law and based on the record, Román-Lagunas and Iwama are entitled to qualified immunity.  (*Supra* at pp. 17-18).

***Third***, in addition to the qualified privilege addressed above, the individual defendants are also protected by an absolute privilege, because complaints made pursuant to IU policy "are

27

protected by an absolute privilege and cannot serve as the basis for civil liability to a person who

is the subject of the complaint." *Hartman*, 883 N.E.2d at 775; *see also Capra v. Cook Cty. Bd. of

*Review*, 733 F.3d 705, 709 (7th Cir. 2013) ("Absolute immunity is available to members of quasi-

judicial adjudicatory bodies when they perform duties that are functionally comparable to those of

a judicial officer[.]") (citations omitted).   Here, Iwama's and Román-Lagunas' (and Klamen's)

actions were conducted as a part of the quasi-judicial process pursuant to IU policy ACA-33.  *See,*

*e.g., Bd. of Trs. of Purdue Univ. v. Eisenstein*, -- N.E.3d --, 2017 WL 4872915, at *9-10 (Ind. Ct.

App. Oct. 30, 2017).  As a result, each individual defendant is entitled to protection by the absolute

privilege for quasi-judicial conduct.

**E.      IU, Iwama and Román-Lagunas did not retaliate against Plaintiff in violation of the Civil Rights Act of 1866 in relation to any post-dismissal appeal process (Count VII: Retaliation for Allegations of Employment Discrimination and Retaliation Civil Rights Act of 1866, 42 U.S.C. §§ 1981, 1983, 1985 Against all Defendants)** [9]

For the reasons set forth above, Plaintiff's retaliation claim alleged as Count VII fails.  (S*ee*

Dkt. No. 37 at pp. 10-11).  This claim is premised on the false allegation that IU, Iwama, or Román-

Lagunas allegedly stopped Plaintiff's post-termination appeal; however, IU, Iwama, and Román-

Lagunas did not terminate Plaintiff's post dismissal appeal.  At a minimum, material fact issues

exist surrounding Plaintiff's retaliation claims, precluding summary judgment in Plaintiff's favor.

As set forth above and in materials referenced in this response, additional issues aside from the

existent material fact disputes also preclude this claim.

---

[9] Although the Complaint lists Count VII as including Retaliation for Allegations of Employment Discrimination and Retaliation Civil Rights Act of 1866, 42 U.S.C. §§ 1981, 1983, 1985 Against all Defendants, Plaintiff's partial summary judgment Motion does not appear to move on 42 U.S.C. § 1985, nor does the complaint assert any facts concerning a conspiracy.  Because of this, Defendants do not address matters concerning 42 U.S.C. § 1985, and reserve the right to respond to any argument that Plaintiff might make regarding this when made.

### III.   CONCLUSION

For the reasons set forth above and in Defendants' Response to Plaintiff's Statement of Material Facts, Evidentiary Objections, & Statement of Additional Facts, including the evidentiary objections incorporated therein, the Court should deny Plaintiff's motion for partial summary judgment.  This premature attempt to seek summary judgment on these claims comes while discovery is still pending.  Moreover, and more importantly, Plaintiff's claims find no support under the law or the factual record, both of which make summary judgment improper on these claims.

Dated:  April 26, 2023                                 Respectfully submitted,

                                                                *s/ V. Chisara Ezie-Boncoeur*
                                                                Kathleen M. Anderson (No. 16351-92)
                                                                BARNES & THORNBURG LLP
                                                                888 South Harrison Street, Suite 600
                                                                Fort Wayne, Indiana 46802
                                                                Telephone:          (260) 423-9440
                                                                Facsimile:          (260) 424-8316
                                                                Email:                kathleen.anderson@btlaw.com

                                                                V. Chisara Ezie-Boncoeur (No. 37251-71)
                                                                BARNES & THORNBURG LLP
                                                                201 South Main Street, Suite 400
                                                                South Bend, Indiana 46601-2130
                                                                Telephone:          (574) 237-1273
                                                                Facsimile:          (574) 237-1125
                                                                Email:                cezie@btlaw.com

**ATTORNEYS FOR DEFENDANTS**

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of the foregoing document was served via the Court's electronic filing system on counsel of record on April 26, 2023.

                                                                Respectfully submitted,

                                                                *s/ V. Chisara Ezie-Boncoeur*
                                                                V. Chisara Ezie-Boncoeur